IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MARIO T. RUCKER                                                    PETITIONER

VS.                                      CIVIL ACTION NO. 3:17cv247-TSL-FKB

SUPERINTENDENT
JACQUELINE BANKS                                              RESPONDENT

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

Mario T. Rucker is a Mississippi state prisoner serving a sentence of life without parole for aggravated assault.  He filed this action seeking federal habeas relief pursuant to 28 U.S.C. § 2254.  Also before the Court is Rucker's motion for summary judgment.  Having considered the petition, as amended, [8-2] and [34], the response, [25], the motion [32], and the state court record, [26], the undersigned recommends that Rucker's motion and the petition be denied.

### II. FACTS AND PROCEDURAL HISTORY

On the evening of September 28, 2012, Rucker stabbed William Nuby multiple times with a pair of scissors.  The stabbing occurred outside the Waffle House on McDowell Road in Jackson, Mississippi.  Rucker explained his attack on Nuby by stating that prior to the stabbing, Nuby had been following him and accusing him of trying to have an affair with Nuby's wife.  After the stabbing, Nuby was transported to the hospital in stable condition.  He died two days later at the hospital.

Rucker was indicted for murder and tried in the First Judicial District of Hinds County, Mississippi.  At trial, the state's forensic pathologist testified that Nuby died from

sharp-force injuries and that the manner of death was homicide. The defense put on its own expert, Dr. Steven Hayne, who testified that the death was accidental and was caused at the hospital by the tearing of Nuby's intercostal arteries during placement of a chest tube. The court instructed the jury on murder and the lesser related crimes of depraved-heart murder, manslaughter, aggravated assault, and simple assault. The jury convicted Rucker of aggravated assault, and the court sentenced him as a habitual offender to life without parole.

Rucker appealed, raising as his sole issue the court's instruction on aggravated assault. The Mississippi Court of Appeals affirmed. *Rucker v. State*, 212 So. 3d 884 (Miss. Ct. App. 2016). Rucker subsequently filed in the state supreme court an application to proceed in the trial court with a motion for post-conviction relief (PCR) asserting twenty-one grounds for relief. [26-9] at 71-78. By order entered May 30, 2017, the supreme court denied the application, determining that all of Rucker's claims were procedurally barred. [26-9] at 22. Rucker filed a subsequent PCR application asserting a claim of ineffective assistance of appellate counsel. [26-9] at 1-5. By order dated August 24, 2017, the supreme court dismissed the application as successive. [26-9] at 2.

Rucker then filed for relief in this court, asserting the same grounds for relief as he had presented in his direct appeal and PCR applications. The grounds in his petition, as amended, are as follows:

1.    [No ground stated].[1]

---

[1] Ground 1 contains only a factual statement regarding the circumstances of the sentencing hearing. Ground 6 is blank. The undersigned has retained Rucker's numbering for clarity.

2.      The trial court erred in (a) allowing the state to argue *ore tenus* motions on the morning of trial, (b) allowing the state to amend the indictment to include a habitual offender enhancement pursuant to Miss. Code Ann. § 99-19-83, (c) finding that Petitioner was a § 99-19-83 habitual offender, and (d) granting other motions made by the state.

3.      The trial court erred in denying defense motions.

4.      The trial court erred in allowing the prosecution to be present for the hearing on Petitioner's *ex parte* motion for expert witness funds.

5.      The trial court erred in denying the defense the opportunity to make a meaningful opening statement.

6.      [Blank].

7.      The trial court erred in quashing subpoenas issued by the defense for physicians and staff who treated the victim.

8.      The trial court erred in limiting cross-examination of police officers and in prohibiting Petitioner from mentioning the victim's demeanor.

9.      The trial court erred in limiting the testimony of the defense expert to the manner and cause of death.

10.     The trial court erred in denying the defense's motion for a directed verdict.

11.     The trial court erred in giving, *sua sponte*, an instruction for aggravated assault.

12.     The trial court denied Petitioner's right to a fair trial by sustaining the state's objections.

13.     The trial court denied Petitioner's right to a fair trial by overruling the defense's objections.

14.     The trial court denied Petitioner his right to a fair trial by admitting evidence that should have been excluded.

15.     The trial court denied Petitioner his right to a fair trial by excluding evidence that should have been admitted.

16.     The trial court erred and denied Petitioner a fair trial by refusing jury instructions offered by the defense.

17. The trial court committed error and violated Petitioner's right to a fair trial by giving instructions offered by the state and which should have been refused.

18. The trial court erred in sentencing Petitioner to life without parole and as a habitual offender under Miss. Code Ann. § 99-19-83.

19. There was insufficient evidence to support the verdict.

20. The verdict was contrary to the weight of the evidence.

21. The cumulative effect of all the errors at trial resulted in the denial of a fair trial.

22. Appellate counsel rendered ineffective assistance of counsel.[2]

## III.  ANALYSIS

### A.  Procedurally Barred Claims.

Rucker raised all of these grounds for relief, with the exception of grounds twenty-two, in his first PCR application.  The state supreme court held all but ground eleven to be procedurally barred because they had been defaulted pursuant to Miss. Code Ann. § 99-39-21.[3]  Rucker presented ground twenty-two in his second PCR application, which

---

[2] This last ground was included pursuant the Court's order of January 18, 2019.  [34].

[3] The order stated in pertinent part as follows:

> After due consideration, the panel finds that most of the claims raised in the petition either were raised at trial and on direct appeal or were capable of being raised in those proceedings.  Those issues have been waived and are procedurally barred.  Miss. Code Ann. § 99-39-21.  Notwithstanding the procedural bar, the panel finds that all of the issues raised in the petition are without merit.

[26-9] at 22.  Section § 99-39-21 of Mississippi's post-conviction relief statute describes two general categories of claims for which review is not available.  Sections (1) and (2) bar claims and legal theories that could have been, but were not, raised at trial and on direct appeal, and are therefore considered waived; Section (3) bars, pursuant to the doctrine of *res judicata*, those claims that were raised and adjudicated at trial and on direct appeal. Because the only issue that could have been barred by *res judicata* was ground eleven, it follows that the supreme court considered all of the other claims to have been defaulted.

was dismissed as successive pursuant to Miss. Code Ann. § 99-39-27(9).  Thus, both of these claims were defaulted pursuant to Mississippi procedural rules.  Where a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is precluded unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A rule is presumed to be adequate where the state court expressly relies upon it.  *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).  Rucker has made no showing of either cause or prejudice.  Neither has he shown that this court's failure to consider any of his defaulted claims will result in a fundamental miscarriage of justice.  Accordingly, federal review of any claim for relief other than ground eleven is precluded.

## B.  Ground Eleven:  Aggravated Assault Instruction

Rucker was indicted solely on the crime of murder.  However, the trial court instructed the jury on three lesser related offenses, including aggravated assault, and it was aggravated assault of which the jury convicted Rucker.  In ground eleven of the petition, Rucker argues that the trial court gave the aggravated assault *sua sponte*, that he had no advance knowledge that such an instruction would be given, and that the court's action amounted to a constructive amendment of the indictment in violation of his Fifth Amendment right to be tried only on the charge set forth in the grand jury indictment.

This ground for relief was the sole error alleged in Rucker's direct appeal.  The basis for the court of appeal's denial of relief was its finding that, contrary to Rucker's characterization, the giving of an aggravated assault instruction had been not *sua sponte* but, rather, at the request of the defense.  Rucker, 212 So. 3d at 885-86.  The court concluded that Rucker could not be heard to complain about the instruction because by requesting it, he had waived any objection to it:

> Although the trial court did provide C-10 [the instruction on the elements of aggravated assault], we would hardly describe this action as sua sponte due to the in-depth conversation concerning an aggravated-assault instruction between the trial court, the State, and Rucker.  Ultimately, Rucker requested an instruction regarding aggravated assault.  Thus, he waived any objection to the jury being instructed as such.

*Id.* at 886.

Respondent has characterized the state court's adjudication of this claim as an adjudication on the merits.  The undersigned agrees that this is a valid way of viewing the appellate court's holding, although it could arguably be viewed as a decision based upon the procedural bar of waiver, in which case this court's review would be precluded pursuant to *Coleman*.  Nevertheless, the undersigned agrees that the better view is for this court to take its cue from Respondent and analyze the state court's decision as an adjudication on the merits.  As such, it is subject to the highly deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA), which allows habeas relief only if the state court's rejection of the claim involved "an unreasonable application of . . . clearly established Federal law . . . as determined by the Supreme Court of the United States" or "an unreasonable determination of the facts" in light of the evidence presented to the state court.  28 U.S.C. § 2254(d).

Because the state court's decision turned on the factual question of whether the instruction had been given *sua sponte*, relief is available only if the court of appeals' decision was based upon an unreasonable determination of this fact.

Rucker contends that neither he nor the state requested that the jury be instructed on aggravated assault. The trial record bears out Rucker's contention that the defense never offered an instruction on the elements of aggravated assault and that the elements instruction for this crime that was given, C-10, was proposed and prepared by the court.[4]  However, the record also shows that the defense first raised the possibility of an aggravated assault instruction and argued in favor of it.  The events which lead up to the giving of C-10 were as follows.  The state initially proposed that the jury be instructed to consider murder and the lesser related crimes of depraved heart murder and manslaughter.[5]   The defense's initial proposed instructions, on the other hand, included two instructions which referenced aggravated assault:  D-7, a proposed form of the verdict, included forms for findings on the crimes of murder, manslaughter, and aggravated assault, and D-14, which, although purporting to give the elements of simple assault, actually set forth the statutory elements for the crime of aggravated assault.

---

[4] For ease of reading, jury instructions citations have been omitted from the text of this opinion.  The instructions referenced and their citations are as follows:  C-10, C.P. 53, [26-1] at 56; C-12, C.P. 55, [26-1] at 58; S-1A, C.P. 58, [26-1] at 61; S-4, C.P. 61, [26-1] at 64; D-7, C.P. 71, [26-1] at 74; D-7A, C.P. 72, [26-1] at 75; D-14, C.P. 84, [26-1] at 87; D-14A, C.P. 85, [26-1] at 88; D-14B, C.P. 86, [26-1] at 89; D-7B, C.P. 73, [26-1] at 76; D-7C, C.P. 74, [26-1] at 77; D-7D, C.P. 75, [26-1] at 78; C-10, C.P. 53, [26-1] at 56.

[5] At the time of Rucker's trial, Mississippi law granted a criminal defendant the right to instructions on lesser related, but not included, offenses if they had a foundation in the evidence.  *See Griffin v. State*, 533 So. 2d 444 (Miss. 1988).   In 2015, the Mississippi Supreme Court overruled *Griffin* and declared that a defendant no longer had a unilateral right to such an instruction.  *Hye v. State*, 162 So. 3d 750, 751 (Miss. 2015).

During the first phase of the instruction conference, the state objected to an instruction on aggravated assault, but the defense counsel argued that the evidence was sufficient to support the instruction.  Tr. 562-63, [26-5] at 111-12.  The court took the matter of the aggravated assault instruction under advisement.  Tr. 563, [26-5] at 112.  The court also pointed out the problem with D-14 (that it erroneously defined simple assault with the elements for aggravated assault), Tr. 558, [26-5] at 107, and noted that there was no instruction on the elements of manslaughter, Tr. 563, [26-5] at 112.  The defense withdrew D-7 and D-14, Tr. 565, 570, [26-5] at 114, 119, and stated that it would prepare an instruction on the elements of aggravated assault, Tr. 564, [26-5] at 113.  The prosecution agreed to prepare an elements instruction for manslaughter.  Tr. 565, [26-5] at 114.

After a recess, the instruction conference resumed.  The defense had by this time prepared several new or revised instructions.  These included D7-A, which set out the elements of manslaughter, D14-A, which set out the elements of simple assault, and D7-B, a form of the verdict that included murder, manslaughter, and simple assault.  Contrary to its previous representation, the defense had not prepared an instruction on the elements of aggravated assault.  Thus, the defense's proposed instructions, as revised, contained no references to aggravated assault at this point.  The state responded to the defense's proposed instructions by arguing against an instruction on simple assault, but the court ruled that an instruction in the form of D14-A, except for a misspelling, would be given.  Tr. 574-77, [26-5] at 123-26.  The defense agreed to

submit a corrected version of the simple assault instruction as D-14B.  Tr. 577, [26-5] at 126.

When the instruction conference resumed the following morning, the court stated that it had concluded that an instruction on the elements of aggravated assault was proper.  Tr. 586, [26-5] at 135.  The defense made no objection.  The court also stated that it would provide a new form of the verdict that was consistent with these instructions.  Tr. 586-87, [26-5] at 135-36. The parties then spent a few minutes reviewing the instructions.  These instructions included a third revision of the manslaughter instruction proposed by the defense, D-7C.  At the end of this instruction, the jury was told that that if it did not find the defendant guilty of manslaughter, it was to consider the lesser offense of simple assault.  The prosecution pointed out that this instruction should be revised so that the next crime to be considered would be aggravated assault, rather than simple assault.  Tr. 590, [26-5] at 139.  The defense agreed.  Tr. 590, 592, [26-5] at 139, 141.  The defense made this change to its manslaughter instruction and submitted the revised instruction as D-7D.

There was no further discussion concerning an instruction on the elements of aggravated assault until the court read the instructions to the jury.   These instructions included an elements instruction for aggravated assault that had been prepared by the court, C-10, as well as elements instructions for murder, S-1A, depraved heart murder, S-4, manslaughter, D-7D, and simple assault, D-14B.   The court's instruction on the form of the verdict, C-12, provided forms for verdicts on these five crimes.[6]

---

[6] Thus, three jury instructions mentioned aggravated assault:  C-10, D-7D, and C-12.

This record establishes that the appellate court's factual finding that the aggravated assault instruction was given at the request of the defense was not objectively unreasonable.  While the defense did not specifically propose or request an instruction on the elements of aggravated assault, the defense initially raised the possibility of an aggravated assault instruction and argued for it.   Although its next set of instructions did not include any mention of aggravated assault, defense counsel never informed the court that it no longer desired that the jury be instructed on this crime.  Furthermore, in the defense's final set of proposed instructions, the defense provided an instruction on the elements of manslaughter, D-7D, that informed the jury that it was to consider aggravated assault if it did not find Rucker guilty of manslaughter. And, finally, defense counsel raised no objection when the court announced its intention to give the jury an instruction on the elements of aggravated assault.  In short, the defense's actions and statements to the court communicated a desire for the jury to be instructed on aggravated assault.

Neither did the state appellate court's decision involve an unreasonable application of clearly-established federal law.  There is no clearly established federal right that protects a state criminal defendant from a constructive amendment to the indictment.  *See Hurtado v. California*, 110 U.S. 516, 534-36 (1884) (holding that Fifth Amendment right to be charged by grand jury indictment was not incorporated into the due process clause of the Fourteenth Amendment); *see also Wilson v. Lindler*, 995 F.2d 1256, 1265 (4th Cir. 1993) (Widener, J., dissenting), *reh'g granted and dissenting opinion adopted,* 8 F.3d 173, 175 (4th Cir. 1993).  Neither has Rucker established that

the giving of an aggravated assault instruction rendered his trial fundamentally unfair, especially in light of the fact that the defense proposed and argued for instructing the jury on aggravated assault.

## IV. CONCLUSION

The state court's adjudication of ground eleven was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court law, nor was it based upon an unreasonable determination of the facts.  The remainder of Rucker's grounds for relief are procedurally barred.  Accordingly, the undersigned recommends that Rucker's motion for summary judgment be denied, that habeas relief be denied, and that the petition be dismissed with prejudice.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 18th day of March, 2019.

s/ F. Keith Ball
United States Magistrate Judge

11